AO 106 (Rev. 04/10)  Application for a Search Warrant



# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. MJ18-5204
)
Subject Premises 1524 203rd Street Court East, )
Spanaway, WA 98387 and the Subject Person Jonel )
Guihama, DOB XX/XX/1981 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

The Subject Premises and Subject Person as further described in Attachment A, which is attached hereto and incorporated herein by this reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by this reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. § 2252 (a)(2) | Receipt or Distribution of Child Pornography |
| Title 18, U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SPECIAL AGENT PATRICK D. DOSPOY, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  8/30/18

_____
*Judge's signature*

City and state:  TACOMA, WASHINGTON

DAVID W. CHRISTEL, U.S. MAGISTRATE JUDGE
*Printed name and title*

2018R01020

**ATTACHMENT A**

**Description of Property to be Searched**

The address of the SUBJECT PREMISES 1524 203rd Street Court East., Spanaway, Washington 98387, and is more fully described as the property containing a two-story, single family home that is mostly tan in color with white trim.  The front door to the SUBJECT PREMISES is white in color.  The garage for the SUBJECT PREMISES, also white in color, is on the west end of the building and the door faces north.



The search is to include all rooms and persons within the SUBJECT PREMISES, vehicles located on the SUBJECT PREMISES, and all garage/parking spaces or storage units/outbuildings on the SUBJECT PREMISES and any digital device(s) found therein.

ATTACHMENT A - 1
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The SUBJECT PERSON is Jonel Guihama (DOB:  XX/XX/1981), pictured below:



ATTACHMENT A - 2
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies or other photographic form, and electrical, electronic, and magnetic form (such as CDs, DVDs, smart cards, thumb drives, camera memory cards, electronic notebooks, or any other storage medium), that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography), and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography), which may be found at the SUBJECT PREMISES or on the SUBJECT PERSON:

1.      Any visual depiction of minor(s) engaged in sexually explicit conduct and child erotica, in any format or media and any items depicted in those visual depictions that may help to identify the person depicted or the creator of the depictions;

2.      Evidence of the installation and use of P2P software, and any associated logs, saved user names and passwords, shared files, and browsing history;

3.      Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4.      All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5.      Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6.      Any non-digital recording devices and non-digital media capable of storing images and videos.

7.      Digital devices and/or their components, which include, but are not limited to:

1          a.     Any digital devices and storage device capable of being used to

2     commit, further, or store evidence of the offense listed above;

3          b.     Any digital devices used to facilitate the transmission, creation,

4     display, encoding or storage of data, including word processing equipment, modems,

5     docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

6          c.     Any magnetic, electronic, or optical storage device capable of

7     storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or

8     memory buffers, smart cards, PC cards, memory sticks, flashdrives, USB/thumb drives,

9     camera memory cards, media cards, electronic notebooks, and personal digital assistants;

10         d.     Any documentation, operating logs and reference manuals regarding

11    the operation of the digital device or software;

12         e.     Any applications, utility programs, compilers, interpreters, and other

13    software used to facilitate direct or indirect communication with the computer hardware,

14    storage devices, or data to be searched;

15         f.     Any physical keys, encryption devices, dongles and similar physical

16    items that are necessary to gain access to the computer equipment, storage devices or

17    data; and

18         g.     Any passwords, password files, test keys, encryption codes or other

19    information necessary to access the computer equipment, storage devices or data;

20        8.     Evidence of who used, owned or controlled any seized digital device(s) at

21    the time the things described in this warrant were created, edited, or deleted, such as logs,

22    registry entries, saved user names and passwords, documents, and browsing history;

23        9.     Evidence of malware that would allow others to control any seized digital

24    device(s) such as viruses, Trojan horses, and other forms of malicious software, as well

25    as evidence of the presence or absence of security software designed to detect malware;

26    as well as evidence of the lack of such malware;

27        10.    Evidence of the attachment to the digital device(s) of other storage devices

28    or similar containers for electronic evidence;

ATTACHMENT B - 2
USAO #2018R01020

1      11.     Evidence of counter-forensic programs (and associated data) that are

2  designed to eliminate data from a digital device;

3      12.     Evidence of times the digital device(s) was used;

4      13.     Any other ESI from the digital device(s) necessary to understand how the

5  digital device was used, the purpose of its use, who used it, and when.

6      14.     Records and things evidencing the use of the IP address 73.109.71.123 (the

7  SUBJECT IP ADDRESS) including:

8      a.     Routers, modems, and network equipment used to connect

9  computers to the Internet;

10      b.     Records of Internet Protocol (IP) addresses used;

11      c.     Records of Internet activity, including firewall logs, caches, browser

12  history and cookies, "bookmarked" or "favorite" web pages, search terms that the user

13  entered into any Internet search engine, and records of user-typed web addresses.

**The seizure of digital devices and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such digital devices constitute instrumentalities of the criminal activity described above, but also for the purpose of the conducting off-site examinations of their contents for evidence, instrumentalities, or fruits of the aforementioned crimes.**

ATTACHMENT B - 3
USAO #2018R01020

1
**AFFIDAVIT**

2

3  STATE OF WASHINGTON        )

4                             )        ss

5  COUNTY OF PIERCE           )

6

7      I, Patrick D. Dospoy, being duly sworn on oath, depose and state:

8              **I. INTRODUCTION AND AGENT BACKGROUND**

9          1.      I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and

10  have been employed by the FBI since March 2017.  I am currently assigned to the Seattle

11  Division of the FBI, Tacoma Resident Agency.  I am assigned to a squad that focuses on

12  investigations relating to terrorism and crimes against children. I completed twenty-and-

13  a-half weeks of training at the FBI academy, including legal classes, investigative

14  techniques, evidence preservation and collection, financial related crimes, and computer

15  related crimes.  I am currently authorized to investigate and enforce violations of federal

16  criminal statutes, including those found in Title 18 and 21 of the United States Code. As a

17  SA in the Seattle Division, I have assisted in numerous different investigations including

18  but not limited to child pornography, international parental kidnapping, sexual abuse, and

19  child prostitution.

20          2.      I am submitting this affidavit in support of an application under Rule 41 of

21  the Federal Rules of Criminal Procedure for a warrant to search the residence located at

22  1524 203rd Street Court East, Spanaway, Washington 98387 (hereinafter the "SUBJECT

23  PREMISES") more fully described in Attachment A, and the person of JONEL

24  GUIHAMA (the SUBJECT PERSON), for the things specified in Attachment B to this

25  Affidavit, for the reasons set forth below.  I also seek authority to examine digital devices

26  or other electronic storage media.  The property and person to be searched is as follows.

27  The warrant would authorize a search of the SUBJECT PREMISES and persons within

28  and the SUBJECT PERSON, as well as the seizure and forensic examination of digital

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   devices found therein, for the purpose of identifying electronically stored data as
2   particularly described in Attachment B, for evidence, fruits, and instrumentalities of
3   violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography), and
4   18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography).

5        3.      The facts set forth in this Affidavit are based on my own personal
6   knowledge; knowledge obtained from other individuals during my participation in this
7   investigation, including other law enforcement officers; review of documents and records
8   related to this investigation; communications with others who have personal knowledge
9   of the events and circumstances described herein; and information gained through my
10  training and experience.

11       4.      Because this affidavit is submitted for the limited purpose of establishing
12  probable cause in support of the application for a search warrant, it does not set forth
13  each and every fact that I or others have learned during the course of this investigation.  I
14  have set forth only the facts that I believe are relevant to the determination of probable
15  cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §
16  2252(a)(2) (Receipt or Distribution of Child Pornography), and 18 U.S.C. §
17  2252(a)(4)(B) (Possession of Child Pornography) will be found at the SUBJECT
18  PREMISES, and on the SUBJECT PERSON.

19       5.      Based on the discoveries I have made, as described below, I believe that an
20  individual at the SUBJECT PREMISES has used a computer or other digital media
21  device to connect to and access a foreign chat service that is well known to law
22  enforcement and commonly used for child exploitation, via Internet Protocol (IP)
23  addresses 73.109.71.123 and distributed at least one image depicting a minor engaged in
24  sexually explicit conduct.  I further believe that computers and other digital devices
25  containing evidence of child pornography will be located at the SUBJECT PREMISES
26  and/or on the SUBJECT PERSON.

27
28

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II. STATEMENT OF PROBABLE CAUSE

**A.   Background of Investigation**

6.     This investigation involves the Kik messenger service.  Kik is a mobile messaging application that allows users to set up accounts and then share text messages, photos, and videos with one another.  They can either chat or share photos/videos one-on-one or as part of Kik groups, where multiple users are able to participate in a group chat and/or exchange of images/videos.

7.     The investigation described below began in the Salt Lake City division of the FBI.  Operating in an undercover capacity (the "UC"), an agent in that division identified several users of a Kik group chat ("Kik Group A")[1] where members discussed and exchanged child pornography.  This particular investigation focuses on one such member of this group, Kik user "335guy99."

8.     The UC determined that "335guy99" was a member of Kik Group A from approximately April 21, 2017, until May 12, 2017.  The UC monitored the communications within Kik Group A and saw numerous discussions related to the sexual exploitation of children and the sharing of child pornography, as well as numerous instances in which members of the group chat posted child pornography and/or links to child pornography to share with other members of Kik Group A.

9.     Like the other members of Kik Group A, Kik user "335guy99" shared child pornography files through the group chat, including three files of suspected child pornography that user shared with Kik Group A on April 23, 2017.  I have reviewed each of these files and describe them below:

**Filename:  IMG_5609.JPG**
The image depicts a prepubescent male lying on his back.  The child is wearing an orange top that is pulled up, exposing his stomach and part of his chest.  The child is not wearing pants and his legs are spread, exposing his penis and scrotum to the

---

[1] The title of this group chat is known to law enforcement but is not included in this affidavit to protect the confidentiality of ongoing criminal investigations into those sharing child pornography using the Kik messenger service.

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

camera.  The child is small in stature and has a youthful appearance.  He also lacks pubic hair and muscular development.  I estimate he is between eight and ten years hold.

**Filename**:  IMG_5615.JPG
The image depicts a minor male lying on his left side on what appears to be a bed. He is wearing a gray t-shirt with a red and a white horizontal line across the chest. The minor is wearing white underwear, which are pulled down to approximately the middle of the his thighs, thereby exposing his genitals.  The minor is holding his penis with his right hand.  The minor has a small amount of pubic hair and lacks muscular development.  He also is youthful in appearance and small in stature.  I estimate he is between eleven and thirteen years old.

**Filename**:  IMG_5614.JPG
The image depicts a prepubescent male lying completely naked on what appears to be a bed with a red blanket.  The child has his left leg in the air and his right leg on the bed.  His genitals are fully exposed to the camera and is inserting his left index finger into his anus.  He is young in appearance and small in stature.  The child has no pubic hair and lacks muscular development.  I estimate he is between six and ten years old.

10.     In response to a subpoena seeking subscriber information and IP connection logs for Kik user "335guy99," Kik reported that this user accessed the Kik service from IP address 73.109.71.123 (the SUBJECT IP ADDRESS) between June 24, 2017, and July 14, 2017.

11.     Kik provided an associated (but unverified) email address as part of the subscriber information.  I linked that address to a Facebook profile associated with that email.  The publicly visible profile photo for this Facebook account appeared to be that of a teenage boy.

12.     In response to a request for subscriber information for the SUBJECT IP ADDRESS, Comcast Communications reported that the SUBJECT IP ADDRESS was assigned to JONEL GUIHAMA at the SUBJECT PREMISES between at least April 2, 2017, and July 29, 2017.

SA DOSPOY AFFIDAVIT
USAO #2018R01020

13.     On May 17, 2018, while conducting surveillance at the SUBJECT PREMISES, I saw a dark-colored BMW SUV with WA license plate BEJ4521 pull into the garage.  Washington DOL records showed that as of July 2018, this vehicle is registered to JONEL GUIHAMA at the SUBJECT PREMISES.

14.     Through social media searches, I located a Facebook account that I believe belongs to the SUBJECT PERSON.  The publicly available profile photos appear to be of the SUBJECT PERSON.  This account is a different account from the one described above that I identified through the information provided by Kik.

15.     Based on further investigation, I learned that the JONEL GUIHAMA, the SUBJECT PERSON, is currently serving in the United States Air Force and works at Joint Base Lewis-McChord.

16.     During my surveillance described above, I saw an Asian male wearing combat fatigues get out of the BMW SUV.  The individual I saw resembled the SUBJECT PERSON, but I was not able to see him well enough to make a positive identification.

17.     From my investigation, I believe there is a second resident of the SUBJECT PREMISES, who is the spouse of the SUBJECT PERSON.

### III. PRIOR EFFORTS TO OBTAIN EVIDENCE

18.     Any other means of obtaining the necessary evidence to prove the elements of computer/Internet-related crimes, for example, a consent search, could result in an unacceptable risk of the loss/destruction of the evidence sought.  If agents pursued a consent-based interview with the SUBJECT PERSON, or any other unknown resident(s) or occupant(s) of the SUBJECT PREMISES, they could rightfully refuse to give consent and the user who distributed child pornography files as outlined above could arrange for destruction of all evidence of the crime before agents could return with a search warrant.  Based on my knowledge, training and experience, the only effective means of collecting and preserving the required evidence in this case is through a search warrant.  Based on

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  my knowledge, no prior search warrant has been obtained to search the SUBJECT

2  PREMISES or the SUBJECT PERSON.

3                    **IV.  TECHNICAL BACKGROUND**

4         19.    Based on my training and experience, when an individual communicates

5  through the Internet, the individual leaves an IP address which identifies the individual

6  user by account and ISP (as described above).  When an individual is using the Internet,

7  the individual's IP address is visible to administrators of websites they visit.  Further, the

8  individual's IP address is broadcast during most Internet file and information exchanges

9  that occur.

10        20.    As noted above, this investigation involves the use of the Kik messenger

11  service.  Kik is a smartphone messenger application based in Ontario, Canada.  Kik lets

12  users communicate through chat.  Users can send text, pictures, and videos.  Kik is a free

13  messaging and sharing app available on iOS and Android, and uses an existing wireless

14  connection or data plan to communicate with other users.  Users can send and receive

15  messages, images, videos, sketches, webpages, memes, gifs, and other content known as

16  bots from within the app.  Users can also create groups, which can have up to 50 friends

17  at a time.  Users can also create and join public groups with hashtags.  Group owners and

18  admins have the capability to add a group name, photos, and remove people from the

19  group.  Owners are the group chat originators and Admins are designated by the Owner.

20  As a security feature of Kik, users can be logged into one device per account at a time.

21  When the user tries to log into their account on a second device, Kik will reset on the first

22  device they were signed into, and chat history will then be cleared to protect privacy.

23        21.    Based on my training and experience, I know that most ISPs provide only

24  one IP address for each residential subscription.   I also know that individuals often use

25  multiple digital devices within their home to access the Internet, including desktop and

26  laptop computers, tablets, and mobile phones.  A device called a router is used to connect

27  multiple digital devices to the Internet via the public IP address assigned (to the

28  subscriber) by the ISP.  A wireless router performs the functions of a router but also

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   includes the functions of a wireless access point, allowing (wireless equipped) digital
2   devices to connect to the Internet via radio waves, not cables.  Based on my training and
3   experience, today many residential Internet customers use a wireless router to create a
4   computer network within their homes where users can simultaneously access the Internet
5   (with the same public IP address) with multiple digital devices.

6          22.     Based on my training and experience and information provided to me by
7   computer forensic agents, I know that data can quickly and easily be transferred from one
8   digital device to another digital device.  Data can be transferred from computers or other
9   digital devices to internal and/or external hard drives, tablets, mobile phones, and other
10  mobile devices via a USB cable or other wired connection.  Data can also be transferred
11  between computers and digital devices by copying data to small, portable data storage
12  devices including USB (often referred to as "thumb") drives, memory cards (Compact
13  Flash, SD, microSD, etc.) and memory card readers, and optical discs (CDs/DVDs).

14         23.     As outlined above, residential Internet users can simultaneously access the
15  Internet in their homes with multiple digital devices.  Also explained above is how data
16  can quickly and easily be transferred from one digital device to another through the use
17  of wired connections (hard drives, tablets, mobile phones, etc.) and portable storage
18  devices (USB drives, memory cards, optical discs).  Therefore, a user could access the
19  Internet using their assigned public IP address, receive, transfer or download data, and
20  then transfer that data to other digital devices, which may or may not have been
21  connected to the Internet during the date and time of the specified transaction.

22         24.     Based on my training and experience, I have learned that the computer's
23  ability to store images and videos in digital form makes the computer itself an ideal
24  repository for child pornography.  The size of hard drives used in computers (and other
25  digital devices) has grown tremendously within the last several years.  Hard drives with
26  the capacity of four (4) terabytes (TB) are not uncommon.  These drives can store
27  thousands of images and videos at very high resolution.

28

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

25.     Based on my training and experience, and information provided to me by other law enforcement officers, I know that people tend to use the same user names across multiple accounts and email services.

26.     Based on my training and experience, collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by companies such as Google, Yahoo, Apple, and Dropbox, among others.  The online services allow a user to set up an account with a remote computing service that provides email services and/or electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  Evidence of such online storage of child pornography is often found on the user's computer.  Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

27.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files.  Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).  In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" and history files of the browser application used.  A forensic examiner often can recover evidence suggesting whether a computer contains wireless software, and when certain files under investigation were uploaded or downloaded.  Such information is often maintained indefinitely until overwritten by other data.

28.     Based on my training and experience, I have learned that producers of child pornography can produce image and video digital files from the average digital camera, mobile phone, or tablet.  These files can then be easily transferred from the mobile device to a computer or other digital device, using the various methods described above.  The

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   digital files can then be stored, manipulated, transferred, or printed directly from a
2   computer or other digital device.  Digital files can also be edited in ways similar to those
3   by which a photograph may be altered; they can be lightened, darkened, cropped, or
4   otherwise manipulated.  As a result of this technology, it is relatively inexpensive and
5   technically easy to produce, store, and distribute child pornography.  In addition, there is
6   an added benefit to the child pornographer in that this method of production is a difficult
7   trail for law enforcement to follow.

8         29.    As part of my training and experience, I have become familiar with the
9   structure of the Internet, and I know that connections between computers on the Internet
10  routinely cross state and international borders, even when the computers communicating
11  with each other are in the same state.   Individuals and entities use the Internet to gain
12  access to a wide variety of information; to send information to, and receive information
13  from, other individuals; to conduct commercial transactions; and to communicate via
14  email.

15        30.    Based on my training and experience, I know that cellular mobile phones
16  (often referred to as "smart phones") have the capability to access the Internet and store
17  information, such as images and videos.  As a result, an individual using a smart phone
18  can send, receive, and store files, including child pornography, without accessing a
19  personal computer or laptop.  An individual using a smart phone can also easily connect
20  the device to a computer or other digital device, via a USB or similar cable, and transfer
21  data files from one digital device to another.  Moreover, many media storage devices,
22  including smartphones and thumb drives, can easily be concealed and carried on an
23  individual's person and smartphones and/or mobile phones are also often carried on an
24  individual's person.

25        31.    As set forth herein and in Attachment B to this Affidavit, I seek permission
26  to search for and seize evidence, fruits, and instrumentalities of the above-referenced
27  crimes that might be found at the SUBJECT PREMISES or on the SUBJECT PERSON,
28  in whatever form they are found.  It has been my experience that individuals involved in

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 child pornography often prefer to store images of child pornography in electronic form.
2 The ability to store images of child pornography in electronic form makes digital devices,
3 examples of which are enumerated in Attachment B to this Affidavit, an ideal repository
4 for child pornography because the images can be easily sent or received over the Internet.
5 As a result, one form in which these items may be found is as electronic evidence stored
6 on a digital device.

7         32.      Based upon my knowledge, experience, and training in child pornography
8 investigations, and the training and experience of other law enforcement officers with
9 whom I have had discussions, I know that there are certain characteristics common to
10 individuals who have a sexualized interest in children and depictions of children:

11         a.      They may receive sexual gratification, stimulation, and satisfaction
12 from contact with children; or from fantasies they may have viewing children engaged in
13 sexual activity or in sexually suggestive poses, such as in person, in photographs, or other
14 visual media; or from literature describing such activity.

15         b.      They may collect sexually explicit or suggestive materials in a
16 variety of media, including photographs, magazines, motion pictures, videotapes, books,
17 slides, and/or drawings or other visual media.  Such individuals often times use these
18 materials for their own sexual arousal and gratification.  Further, they may use these
19 materials to lower the inhibitions of children they are attempting to seduce, to arouse the
20 selected child partner, or to demonstrate the desired sexual acts.  These individuals may
21 keep records, to include names, contact information, and/or dates of these interactions, of
22 the children they have attempted to seduce, arouse, or with whom they have engaged in
23 the desired sexual acts.

24         c.      They often maintain any "hard copies" of child pornographic
25 material that is, their pictures, films, video tapes, magazines, negatives, photographs,
26 correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of
27 their home or some other secure location.  These individuals typically retain these "hard
28 copies" of child pornographic material for many years, as they are highly valued.

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    d.    Likewise, they often maintain their child pornography collections
2   that are in a digital or electronic format in a safe, secure and private environment, such as
3   a computer and surrounding area.  These collections are often maintained for several
4   years and are kept close by, often at the individual's residence or some otherwise easily
5   accessible location, to enable the owner to view the collection, which is valued highly.

6    e.    They also may correspond with and/or meet others to share
7   information and materials; rarely destroy correspondence from other child pornography
8   distributors/collectors; conceal such correspondence as they do their sexually explicit
9   material; and often maintain lists of names, addresses, and telephone numbers of
10   individuals with whom they have been in contact and who share the same interests in
11   child pornography.

12    f.    They generally prefer not to be without their child pornography for
13   any prolonged time period.  This behavior has been documented by law enforcement
14   officers involved in the investigation of child pornography throughout the world.

15    g.    E-mail itself provides a convenient means by which individuals can
16   access a collection of child pornography from any computer, at any location with Internet
17   access.  Such individuals therefore do not need to physically carry their collections with
18   them but rather can access them electronically.   Furthermore, these collections can be
19   stored on email "cloud" servers, which allow users to store a large amount of material at
20   no cost, without leaving any physical evidence on the users' computer(s).

21   33.    In addition to offenders who collect and store child pornography, law
22   enforcement has encountered offenders who obtain child pornography from the internet,
23   view the contents and subsequently delete the contraband, often after engaging in self-
24   gratification.  In light of technological advancements, increasing Internet speeds and
25   worldwide availability of child sexual exploitative material, this phenomenon offers the
26   offender a sense of decreasing risk of being identified and/or apprehended with quantities
27   of contraband. This type of consumer is commonly referred to as a 'seek and delete'
28   offender, knowing that the same or different contraband satisfying their interests remain

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   easily discoverable and accessible online for future viewing and self-gratification.  I
2   know that, regardless of whether a person discards or collects child pornography he/she
3   accesses for purposes of viewing and sexual gratification, evidence of such activity is
4   likely to be found on computers and related digital devices, including storage media, used
5   by the person.  This evidence may include the files themselves, logs of account access
6   events, contact lists of others engaged in trafficking of child pornography, backup files,
7   and other electronic artifacts that may be forensically recoverable.

8       34.     Given the above-stated facts, and based on my knowledge, training and
9   experience, along with my discussions with other law enforcement officers who
10  investigate child exploitation crimes, I believe that Kik user who possessed and
11  distributed child pornography files to Kik Group A likely has a sexualized interest in
12  children and depictions of children and that evidence of child pornography is likely to be
13  found on digital media devices, including mobile and/or portable digital devices found at
14  the SUBJECT PREMISES or on the SUBJECT PERSON.

15      35.     Based on my training and experience, and that of computer forensic agents
16  that I work and collaborate with on a daily basis, I know that every type and kind of
17  information, data, record, sound or image can exist and be present as electronically stored
18  information on any of a variety of computers, computer systems, digital devices, and
19  other electronic storage media.  I also know that electronic evidence can be moved easily
20  from one digital device to another.  As a result, I believe that electronic evidence may be
21  stored on any digital device present at the SUBJECT PREMISES or on the SUBJECT
22  PERSON.

23      36.     Based on my training and experience, and my consultation with computer
24  forensic agents who are familiar with searches of computers, I know that in some cases
25  the items set forth in Attachment B may take the form of files, documents, and other data
26  that is user-generated and found on a digital device.  In other cases, these items may take
27  the form of other types of data - including in some cases data generated automatically by
28  the devices themselves.

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

37.     Based on my training and experience, and my consultation with computer forensic agents who are familiar with searches of computers, I believe that if digital devices are found in the SUBJECT PREMISES or on the SUBJECT PERSON, there is probable cause to believe that the items set forth in Attachment B will be stored in those digital devices for a number of reasons, including but not limited to the following:

a.     Once created, electronically stored information (ESI) can be stored for years in very little space and at little or no cost.  A great deal of ESI is created, and stored, moreover, even without a conscious act on the part of the device operator.  For example, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache," without the knowledge of the device user.  The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes affirmative steps to delete them.  This ESI may include relevant and significant evidence regarding criminal activities, but also, and just as importantly, may include evidence of the identity of the device user, and when and how the device was used.  Most often, some affirmative action is necessary to delete ESI.  And even when such action has been deliberately taken, ESI can often be recovered, months or even years later, using forensic tools.

b.     Wholly apart from data created directly (or indirectly) by user-generated files, digital devices - in particular, a computer's internal hard drive - contain electronic evidence of how a digital device has been used, what it has been used for, and who has used it.  This evidence can take the form of operating system configurations, artifacts from operating systems or application operations, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible for a user to use such specialized software to delete this type of information - and, the use of such special software may itself result in ESI that is relevant to the criminal investigation.  In particular, to properly retrieve and analyze electronically

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   stored (computer) data, and to ensure accuracy and completeness of such data and to
2   prevent loss of the data either from accidental or programmed destruction, it is necessary
3   to conduct a forensic examination of the computers.  To effect such accuracy and
4   completeness, it may also be necessary to analyze not only data storage devices, but also
5   peripheral devices which may be interdependent, the software to operate them, and
6   related instruction manuals containing directions concerning operation of the computer
7   and software.

8               **V. SEARCH AND/OR SEIZURE OF DIGITAL DEVICES**

9        38.    In addition, based on my training and experience and that of computer
10  forensic agents that I work and collaborate with on a daily basis, I know that in most
11  cases it is impossible to successfully conduct a complete, accurate, and reliable search for
12  electronic evidence stored on a digital device during the physical search of a search site
13  for a number of reasons, including but not limited to the following:

14              a.    Technical Requirements:  Searching digital devices for criminal
15  evidence is a highly technical process requiring specific expertise and a properly
16  controlled environment.  The vast array of digital hardware and software available
17  requires even digital experts to specialize in particular systems and applications, so it is
18  difficult to know before a search which expert is qualified to analyze the particular
19  system(s) and electronic evidence found at a search site.  As a result, it is not always
20  possible to bring to the search site all of the necessary personnel, technical manuals, and
21  specialized equipment to conduct a thorough search of every possible digital
22  device/system present.  In addition, electronic evidence search protocols are exacting
23  scientific procedures designed to protect the integrity of the evidence and to recover even
24  hidden, erased, compressed, password-protected, or encrypted files.  Since ESI is
25  extremely vulnerable to inadvertent or intentional modification or destruction (both from
26  external sources and from destructive code embedded in the system such as a "booby
27  trap"), a controlled environment is often essential to ensure its complete and accurate
28  analysis.

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    b. Volume of Evidence:  The volume of data stored on many digital
2 devices is typically so large that it is impossible to search for criminal evidence in a
3 reasonable period of time during the execution of the physical search of a search site.  A
4 single megabyte of storage space is the equivalent of 500 double-spaced pages of text.  A
5 single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000
6 double-spaced pages of text. Computer hard drives are now being sold for personal
7 computers capable of storing up to four terabytes (4,000 gigabytes of data.)  Additionally,
8 this data may be stored in a variety of formats or may be encrypted (several new
9 commercially available operating systems provide for automatic encryption of data upon
10 shutdown of the computer).

11    c. Search Techniques:  Searching the ESI for the items described in
12 Attachment B may require a range of data analysis techniques.  In some cases, it is
13 possible for agents and analysts to conduct carefully targeted searches that can locate
14 evidence without requiring a time-consuming manual search through unrelated materials
15 that may be commingled with criminal evidence.   In other cases, however, such
16 techniques may not yield the evidence described in the warrant, and law enforcement
17 personnel with appropriate expertise may need to conduct more extensive searches, such
18 as scanning areas of the disk not allocated to listed files, or peruse every file briefly to
19 determine whether it falls within the scope of the warrant.

20   39. In this particular case, and in order to protect the third party privacy of
21 innocent individuals residing in the residence, the following are search techniques that
22 will be applied:

23   i. Device use and ownership will be determined through interviews, if
24 possible, and through the identification of user account(s), associated account names, and
25 logons associated with the device.  Determination of whether a password is used to lock a
26 user's profile on the device(s) will assist in knowing who had access to the device or
27 whether the password prevented access.

28   ii. Use of hash value library searches.

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      iii.    Use of keyword searches, i.e., utilizing key words that are known to be
2   associated with the sharing of child pornography.

3      iv.    Identification of non-default programs that are commonly known to be used
4   for the exchange and viewing of child pornography, such as, eMule, uTorrent, BitTorrent,
5   Ares, Shareaza, Gnutella, etc.

6      v.    Looking for file names indicative of child pornography, such as, PTHC,
7   PTSC, Lolita, 3yo, etc. and file names identified during the undercover download of child
8   pornography.

9      vi.    Viewing of image files and video files.

10     vii.    As indicated above, the search will be limited to evidence of child
11          pornography and will not include looking for personal documents and files that are
12          unrelated to the crime.

13     40.    These search techniques may not all be required or used in a particular
14   order for the identification of digital devices containing items set forth in Attachment B
15   to this Affidavit.  However, these search techniques will be used systematically in an
16   effort to protect the privacy of third parties.  Use of these tools will allow for the quick
17   identification of items authorized to be seized pursuant to Attachment B to this Affidavit,
18   and will also assist in the early exclusion of digital devices and/or files which do not fall
19   within the scope of items authorized to be seized pursuant to Attachment B to this
20   Affidavit.

21     41.    In accordance with the information in this Affidavit, law enforcement
22   personnel will execute the search of digital devices seized pursuant to this warrant as
23   follows:

24          a.    Upon securing the search site, the search team will conduct an initial
25   review of any digital devices/systems to determine whether the ESI contained therein can
26   be searched and/or duplicated on site in a reasonable amount of time and without
27   jeopardizing the ability to accurately preserve the data.

28

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          b.     If, based on their training and experience, and the resources

2  available to them at the search site, the search team determines it is not practical to make

3  an on-site search, or to make an on-site copy of the ESI within a reasonable amount of

4  time and without jeopardizing the ability to accurately preserve the data, then the digital

5  devices will be seized and transported to an appropriate law enforcement laboratory for

6  review and to be forensically copied ("imaged"), as appropriate.

7          c.     In order to examine the ESI in a forensically sound manner, law

8  enforcement personnel with appropriate expertise will produce a complete forensic

9  image, if possible and appropriate, of any digital device that may contain data or items

10  that fall within the scope of Attachment B of this Affidavit.  In addition, appropriately

11  trained personnel may search for and attempt to recover deleted, hidden, or encrypted

12  data to determine whether the data fall within the list of items to be seized pursuant to the

13  warrant.  In order to search fully for the items identified in the warrant, law enforcement

14  personnel, which may include investigative agents, may then examine all of the data

15  contained in the forensic image/s and/or on the digital devices to view their precise

16  contents and determine whether the data fall within the list of items to be seized pursuant

17  to the warrant.

18          d.     The search techniques that will be used will be only those

19  methodologies, techniques and protocols as may reasonably be expected to find, identify,

20  segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to

21  this Affidavit.

22          e.     If, after conducting its examination, law enforcement personnel

23  determine that any digital device is an instrumentality of the criminal offenses referenced

24  above, the government may retain that device during the pendency of the case as

25  necessary to, among other things, preserve the instrumentality evidence for trial, ensure

26  the chain of custody, and litigate the issue of forfeiture.

27     42.     In order to search for ESI that falls within the list of items to be seized

28  pursuant to Attachment B to this Affidavit, law enforcement personnel will seize and

SA DOSPOY AFFIDAVIT
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  search the following items (heretofore and hereinafter referred to as "digital devices"),

2  subject to the procedures set forth above:

3        a.     Any digital device capable of being used to commit, further, or store

4  evidence of the offense(s) listed above;

5        b.     Any digital device used to facilitate the transmission, creation,

6  display, encoding, or storage of data, including word processing equipment, modems,

7  docking stations, monitors, printers, cameras, encryption devices, and optical scanners;

8        c.     Any magnetic, electronic, or optical storage device capable of

9  storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or

10  memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives,

11  camera memory cards, media cards, electronic notebooks, and personal digital assistants;

12        d.     Any documentation, operating logs and reference manuals regarding

13  the operation of the digital device, or software;

14        e.     Any applications, utility programs, compilers, interpreters, and other

15  software used to facilitate direct or indirect communication with the device hardware, or

16  ESI to be searched;

17        f.     Any physical keys, encryption devices, dongles and similar physical

18  items that are necessary to gain access to the digital device, or ESI; and

19        g.     Any passwords, password files, test keys, encryption codes or other

20  information necessary to access the digital device or ESI.

21  //

22  //

23  //

24  //

25

26

27

28

SA DOSPOY AFFIDAVIT
USAO #2018R01020

# VI. CONCLUSION

43.     Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography), and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) are located at the SUBJECT PREMISES or on the SUBJECT PERSON as more fully described in Attachment A to this Affidavit, as well as on and in any digital devices found therein.  I therefore request that the court issue a warrant authorizing a search of the location, vehicles, and person specified in Attachment A for the items more fully described in Attachment B.


Patrick D. Dospoy, Affiant
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me this ___30th___ day of August, 2018.


DAVID W. CHRISTEL
United States Magistrate Judge

SA DOSPOY AFFIDAVIT
USAO #2018R01020

1

## **ATTACHMENT A**

2

### **Description of Property to be Searched**

3        The address of the SUBJECT PREMISES 1524 203rd Street Court East.,

4   Spanaway, Washington 98387, and is more fully described as the property containing a

5   two-story, single family home that is mostly tan in color with white trim.  The front door

6   to the SUBJECT PREMISES is white in color.  The garage for the SUBJECT

7   PREMISES, also white in color, is on the west end of the building and the door faces

8   north.



23        The search is to include all rooms and persons within the SUBJECT PREMISES,

24   vehicles located on the SUBJECT PREMISES, and all garage/parking spaces or storage

25   units/outbuildings on the SUBJECT PREMISES and any digital device(s) found therein.

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       The SUBJECT PERSON is Jonel Guihama (DOB:  XX/XX/1981), pictured

2 below:



# ATTACHMENT B
## ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies or other photographic form, and electrical, electronic, and magnetic form (such as CDs, DVDs, smart cards, thumb drives, camera memory cards, electronic notebooks, or any other storage medium), that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography), and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography), which may be found at the SUBJECT PREMISES or on the SUBJECT PERSON:

1.     Any visual depiction of minor(s) engaged in sexually explicit conduct and child erotica, in any format or media and any items depicted in those visual depictions that may help to identify the person depicted or the creator of the depictions;

2.     Evidence of the installation and use of P2P software, and any associated logs, saved user names and passwords, shared files, and browsing history;

3.     Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4.     All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5.     Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6.     Any non-digital recording devices and non-digital media capable of storing images and videos.

7.     Digital devices and/or their components, which include, but are not limited to:

ATTACHMENT B - 1
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1           a.      Any digital devices and storage device capable of being used to

2    commit, further, or store evidence of the offense listed above;

3           b.      Any digital devices used to facilitate the transmission, creation,

4    display, encoding or storage of data, including word processing equipment, modems,

5    docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

6           c.      Any magnetic, electronic, or optical storage device capable of

7    storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or

8    memory buffers, smart cards, PC cards, memory sticks, flashdrives, USB/thumb drives,

9    camera memory cards, media cards, electronic notebooks, and personal digital assistants;

10          d.      Any documentation, operating logs and reference manuals regarding

11   the operation of the digital device or software;

12          e.      Any applications, utility programs, compilers, interpreters, and other

13   software used to facilitate direct or indirect communication with the computer hardware,

14   storage devices, or data to be searched;

15          f.      Any physical keys, encryption devices, dongles and similar physical

16   items that are necessary to gain access to the computer equipment, storage devices or

17   data; and

18          g.      Any passwords, password files, test keys, encryption codes or other

19   information necessary to access the computer equipment, storage devices or data;

20      8.      Evidence of who used, owned or controlled any seized digital device(s) at

21   the time the things described in this warrant were created, edited, or deleted, such as logs,

22   registry entries, saved user names and passwords, documents, and browsing history;

23      9.      Evidence of malware that would allow others to control any seized digital

24   device(s) such as viruses, Trojan horses, and other forms of malicious software, as well

25   as evidence of the presence or absence of security software designed to detect malware;

26   as well as evidence of the lack of such malware;

27      10.     Evidence of the attachment to the digital device(s) of other storage devices

28   or similar containers for electronic evidence;

ATTACHMENT B - 2
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11.     Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from a digital device;

12.     Evidence of times the digital device(s) was used;

13.     Any other ESI from the digital device(s) necessary to understand how the digital device was used, the purpose of its use, who used it, and when.

14.     Records and things evidencing the use of the IP address 73.109.71.123 (the SUBJECT IP ADDRESS) including:

      a.     Routers, modems, and network equipment used to connect computers to the Internet;

      b.     Records of Internet Protocol (IP) addresses used;

      c.     Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

**The seizure of digital devices and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such digital devices constitute instrumentalities of the criminal activity described above, but also for the purpose of the conducting off-site examinations of their contents for evidence, instrumentalities, or fruits of the aforementioned crimes.**

ATTACHMENT B - 3
USAO #2018R01020

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970